[No. B170359. Second Dist., Div. Four. Mar. 27, 2006.]

NATE HOLDEN et al., Plaintiffs and Appellants, v.
LOS ANGELES CITY ETHICS COMMISSION, Defendant and
Respondent.

COUNSEL

Geragos & Geragos, Mark Geragos and Vicken Sonentz-Papazian for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Katherine J. Hamilton and Claudia McGee Henry, Assistant City Attorneys, for Defendant and Respondent.

OPINION

**WILLHITE, J.**—In this case, we are asked to determine when a decision of the Los Angeles City Ethics Commission finding violations of campaign financing law becomes final for the purposes of the statute of limitations set forth in Code of Civil Procedure section 1094.6. We hold that the decision is final when, at a public meeting, the commission adopts findings and an order supporting its decision. Because in this case appellants Nate Holden and Anne Froehlich filed their petition for writ of mandate more than 90 days after the commission adopted the findings and order they sought to challenge, we affirm the trial court's judgment denying the petition on the ground that it was time-barred.

## BACKGROUND

Holden ran for reelection to city council in 1999. Froehlich was treasurer for his 1999 campaign, and had been Holden's treasurer on many of his previous campaigns. Holden was challenged in the primary in April 1999, and won the general election in June 1999.

Following Holden's reelection in 1999, the Los Angeles City Ethics Commission conducted an audit of his campaign.[1] It discovered 31 violations of the city campaign financing laws. Some of those violations involved excess campaign contributions, in which Holden's campaign accepted more than $500 from a single contributor. The remaining violations involved excess matching funds, in which Holden's campaign requested and received more matching funds that it was entitled to. Under the matching funds law, a participating candidate is entitled to receive matching funds for each contribution, up to $250 per contributor. In some instances, Holden's campaign submitted requests for matching funds for contributions for which it had already received matching funds. In other instances, Holden's campaign had received two checks from a single contributor, for a total of $500. The campaign then submitted each check separately and failed to disclose when it submitted the second check that it had already received $250 in matching funds for that contributor. As a result, in those instances the campaign was paid $500 in matching funds for a single contributor.

Holden's campaign conducted its own audit after the election and discovered some of the excess campaign contributions. Although the campaign returned some of those contributions, the campaign finance law requires that the campaign return the excess within 14 days. Because the excess contributions were not returned until much later, the commission deemed all of the instances to be violations, regardless of whether they were returned. The campaign's audit apparently did not discover the excess matching funds.

The executive director of the commission[2] filed an accusation in December 2001, charging Holden and Froehlich with 31 counts of campaign finance law violations.[3] The first 11 counts allege violations of Los Angeles City Charter section 470(c)(3) (the excess contribution counts). The remaining 20 counts allege violations of Los Angeles Municipal Code section 49.7.20 (the excess matching funds counts).

An administrative hearing before the five commissioners took place over three days in April 2002. Holden and Froehlich did not contest the fact that excess contributions were received or that the campaign requested and received excess matching funds. Instead, they contended that these instances

---

[1] The commission routinely conducts audits of all campaigns. Following the 1995 election, they found numerous violations in Holden's campaign and, in a stipulated order, fined Holden more than $27,000.

[2] The executive director oversees the enforcement division of the commission and is responsible for bringing charges on behalf of the commission for campaign finance violations. The enforcement proceedings are conducted before the five commissioners of the commission.

[3] An amended accusation was later filed, in which some information on the exhibits attached to the accusation was corrected. The corrected information is not relevant to this appeal.

were innocent mistakes and that they returned most of the excess contributions after they conducted their own postelection audit. They also argued that the Holden campaign was subject to selective prosecution by the commission.

The commissioners found that the evidence established violations as to each count of the accusation, with two of the commissioners stating that they were technical violations. Three of the commissioners voted in favor of a motion to order repayment of $4,500 and to fine Holden and Froehlich $2,000. The other two commissioners voted against the motion on the ground that they believed the fine should be in the range of $25,000 to $30,000. The president of the commission directed counsel for the executive director to draft findings and submit them to the city attorney for review, and then submit them to Holden and Froehlich for comment. She stated that the findings would be presented to the commission for adoption at its next meeting, on May 21, 2002.

Holden and Froehlich both attended the May 21, 2002 commission meeting. Holden asked that the matter be continued because he wanted to get an opinion from the city attorney regarding a possible charging deficiency in the accusation. Although the president of the commission told Holden that the commission would not reconsider its determination that violations occurred, the commission continued the matter until its next meeting, on June 18, 2002, because it determined that the proposed findings and order needed to be revised to more accurately reflect their decision.

An attorney attended the June 18, 2002 commission meeting on behalf of both Holden and Froehlich, and argued that the commission's decision was improper because there was a charging deficiency in the accusation. The president of the commission told him that the commission's decision as to the violations was final and that the commission would not reconsider it. The commission then voted to adopt the findings and order, after amending it to provide, among other things, a deadline for payment of the penalty. The final findings and order were served on Holden and Froehlich on June 28, 2002.

On September 27, 2002—exactly 90 days after the findings and order were served—Holden and Froehlich filed a petition for writ of mandate in the superior court. The petition refers to the actions that the commission took (including "adopt[ing] Findings and Order in which Petitioners were found to have violated [Los Angeles Municipal Code] Section 49.7.20"), and asks the court to "set aside CEC's [i.e., the commission's] Order" either in its entirety or as to the excess matching funds counts. However, it names as the only respondent LeeAnn Pelham, executive director of the Los Angeles City Ethics Commission. After a copy of the petition was delivered to Pelham, the city attorney, representing Pelham, wrote to Holden's and Froehlich's counsel

to inform him that Pelham was not the appropriate respondent in a petition challenging the actions of the commission. Holden and Froehlich filed an amended petition for writ of mandate on October 16, 2002, naming the commission as the respondent and Pelham as the real party in interest.[4]

The commission opposed the petition on three grounds: it was time-barred, there was no prejudice to Holden and Froehlich caused by the accusation's citation to Los Angeles Municipal Code section 49.7.20, and Holden and Froehlich waived any charging deficiency by failing to raise it at the administrative hearing. As to the time bar, the commission contended that the decision was final when it was announced on April 30, 2002, and "[a]rguably, . . . the statute ran on July 29, 2002." Nevertheless, it noted that it did "direct staff to prepare findings based on the entire record of the hearing," and those findings were adopted on June 18, 2002, and served on June 28, 2002. It argued, "Even assuming, *arguendo*, that the 90 day clock ran from the serving of the Findings on June 28, 2002, Petitioners filed this action against the wrong party. Although they sought to correct this error by amending the Petition on October 16, 2002, they can not avoid the running of the statute of limitations because the relation back doctrine, which can save late filings, is inapplicable."

The trial court denied the petition. It found that, because there is no statutory provision for a written decision or written findings, the administrative decision became final under Code of Civil Procedure section 1094.6 when it was announced on April 30, 2002, the last day of the administrative hearing. Therefore, the court found that the petition was time-barred. The court also found that even if the petition were not time-barred, it would be denied on the merits. Holden and Froehlich timely filed a notice of appeal from the judgment denying the petition.

## DISCUSSION

On appeal, Holden and Froehlich challenge both the trial court's finding that their petition was time-barred and the commission's decision on the merits. We need not address the merits of the commission's decision because we hold the petition was time-barred.

■ Los Angeles Administrative Code section 24.1.2, which governs investigations and enforcement proceedings conducted by the commission under Los Angeles City Charter section 706, provides that the statute of limitations set forth in Code of Civil Procedure section 1094.6 applies to judicial review of the commission's enforcement decisions. (L.A. Admin.

---

[4] Pelham ultimately was dismissed from the action.

Code, § 24.1.2, subd. (e)(7)(G).) ■ Code of Civil Procedure section 1094.6 provides that a petition for writ of mandate challenging any decision of a local agency "shall be filed not later than the 90th day following the date on which the decision becomes final." (Code Civ. Proc., § 1094.6, subd. (b).)

Under Code of Civil Procedure section 1094.6, the date upon which the decision becomes final depends upon whether any statute, charter, or rule provides for reconsideration of the decision or for a written decision or written findings supporting the decision. None of the parties in this case asserts there is a provision for reconsideration or for a written decision or findings. Thus, "the decision is final on the date it is announced. If the decision is not announced at the close of the hearing, the date, time, and place of the announcement of the decision shall be announced at the hearing." (Code Civ. Proc., § 1094.6, subd. (b).)

The statute does not define "announced" or explain how a decision is "announced." But applying a " 'plain and commonsense meaning' " to that term (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]), a decision necessarily is "announced" when it is made known to the public. (See, e.g., American Heritage Dict. (2d college ed. 1985), p. 112 [defining "announce": "1. To bring to public notice; declare or proclaim officially or formally"].)

As noted *ante*, the trial court found that the decision was "announced" on April 30, 2002, when the commissioners found there was sufficient evidence to support all of the alleged counts and voted to fine Holden and Froehlich $6,500. On appeal, Holden and Froehlich argue that no decision ever was announced because the decision that was made on April 30 was subject to further proceedings. Therefore, Holden and Froehlich contend the statute of limitations has yet to begin to run. Neither position is correct.

■ The commission's decision was not "announced" on April 30 because it was not complete on that date. Under the charter and statutory provisions governing enforcement proceedings, if the commission determines that a violation has occurred it must issue an order and make findings supporting its determination. (L.A. City Charter, § 706, subd. (c); L.A. Admin. Code, § 24.1.2, subd. (e)(7)(D)(iv).) As of April 30, the commission had done neither. Indeed, at that hearing, which was open to the public, the commission directed commission staff to draft the findings, and "announced" that it would consider the proposed findings at its next public meeting. And, although the commission had determined the amount of the penalty it intended to impose and "announced" that determination, it had not yet ordered Holden and Froehlich to pay the penalty, nor had it determined and "announced" the

amount of time they would be given to pay it. Therefore, the commission's decision did not become final on April 30, 2002.

■ But, contrary to Holden's and Froehlich's contention, the fact that the commission conducted further proceedings before adopting the findings and order does not mean that the decision never was "announced." Although the commission did not "announce" its complete decision on the last day of the administrative hearing, the president of the commission did state that the commission would consider and vote on the proposed findings at the next public meeting of the commission. When, at that meeting, it was determined that further amendments were needed, the president stated that the commission would consider and vote on the amended proposed findings at the next scheduled public meeting, to be held on June 18, 2002. At the June 18 public meeting, attended by Holden and Froehlich through their counsel, the commission voted to order Holden and Froehlich to pay the $6,500 penalty within 60 days, and adopted the findings and order as amended. Under Los Angeles Administrative Code section 24.1.2, subdivision (f), the finding and order were "available for public inspection in accordance with the requirements of the California Public Records Act (Government Code Section 6250, et seq.)" (Italics omitted.) Thus, the commission made its completed decision known to the public—that is, it "announced" its decision—at the June 18 meeting. And it complied with the requirement of Code of Civil Procedure section 1094.6 to "announce" at the close of the administrative hearing "the date, time, and place of the announcement of the decision" because it made known to the public when it intended to vote to adopt the findings and order.

■ Because the commission "announced" its decision at the June 18, 2002 meeting, the 90-day statute of limitations began to run on that date. Holden and Froehlich did not file their original petition until September 27, 2002, which was 100 days after the decision became final. Therefore, their action is time-barred.[5]

---

[5] The commission suggested in the trial court and in its respondent's brief on appeal that the statute of limitations may not have started to run until June 28, 2002, when Holden and Froehlich were served with the findings and order. There does not appear to be any basis for this suggestion. There is no provision in the Los Angeles City Charter, Municipal Code, or Administrative Code that requires service of the findings supporting a decision of the commission before the decision is deemed final. Code of Civil Procedure section 1094.6 makes no reference to service of the decision. Instead, the statute makes clear that the decision is final when it is "announced."

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Curry, Acting P. J., and Hastings, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.